JANE T. PYPER, RESPONDENT *v*. THE SALT LAKE AMUSEMENT ASSOCIATION, APPELLANT.

20    9<br>23   641

*Corporation—Services by Officer and Stockholder—Claim for—By Assignee—Estoppel of Original Claimant—Extends to Assignee.*

Where a stockholder and officer of a corporation performs services for the corporation without any agreement as to compensation and afterwards attends a meeting of stockholders where the insolvency of the corporation is discussed, and signs a resolution providing for the payment of the entire indebtedness by the issue and sale of new capital stock upon the calling in of the old, and when notified that all debts had been paid by sale of new stock, joins with other stockholders in directing distribution of the remaining stock without intimation that the corporation is indebted to him, he is estopped from thereafter making claim against the corporation for the services rendered; and this estoppel extends to his assignee.

(Decided June 9, 1899.)

Appeal from the Third District Court Salt Lake County, Hon. A. N. Cherry, *Judge.*

Action by plaintiff on an assigned claim against defendant for services rendered. From a judgment for plaintiff defendant appeals. *Reversed.*

*Messrs. Bennett, Harkness, Howat, Bradley & Richards*, for appellant.

The following cases are in point and clearly demonstrate that the plaintiff claiming under B. T. Pyper, by an assignment made after B. T. Pyper accepted the stock, is estopped from now asserting against the defendant the claim of B. T. Pyper for compensation for services.

*Smith* v. *Lusk*, 24 So., 256; *Smith* v. *Ry. Co.*, (Ia.) 73
N. W. Rep., 581; *Moyes* v. *Kimball*, 42 At. Rept. 400;
*Spears* v. *Lawrence*, 38 Pac., 1049.

*Messrs. Wilson & Smith*, for respondent.

A party, will, in many instances, be concluded by his
declarations or conduct, which have influenced the con-
duct of another to his injury, but in the application of this
principle, with respect to the title to real property (and
the rule is the same with respect to personal property)
Sec. 950, Vol. 2. Herman on Estoppel; *Cummings* v.
*Webster*, 4 Mason, 142; *Commonwealth* v. *Sherman*,
18 Pa. St. 243; it must appear, first, that the party making
the admission by his declaration or conduct was apprised
of the true state of his own title; second, that he made the
admission with intent to deceive or with such culpable
and careless negligence as to amount to constructive
fraud; third, that the other party was not only destitute
of all knowledge of the true state of the title, but of all
means of acquiring such knowledge, and further, that he
relied directly on such admission and will be injured by
allowing its truth to be disproved.   Herman on Estoppel,
Secs. 944-5-6-7-8-9 and 950; *Biddle Boggs* v. *Merced M.
Co.*, 14 Cal. 368; *Brigham Young Trust Co.* v. *Wag-
ner*, (Utah) 40 Pac. 764.

### STATEMENT OF FACTS.

This action was brought against the Salt Lake Amuse-
ment Association, a corporation, on a claim for certain
services alleged to have been performed for the corporation
by one B. T. Pyper, and which claim was assigned to the
plaintiff.

It appears from the record that the association was in-
corporated May 3, 1894, for the purpose of erecting a

building and maintaining therein a place of amusement. The assignor of the plaintiff was the treasurer of the corporation from the time of its incorporation until June 3, 1895, and, as such officer, during such time, it appears he performed the services which gave rise to the claim in controversy. It seems he received bids for the construction of the building, hired carpenters, paid them off, let contracts, sold tickets, and generally performed such services as the circumstances and exegencies required, but had no agreement with the corporation for compensation. It does not appear that at any time, while he was in office, anything was said between him and the other officers or agents of the corporation concerning wages for his services. Nor does it appear that any of the other officers were paid wages for any services which they rendered the corporation. Not until after he ceased to be an officer did the assignor claim compensation for his services. It is further shown from the evidence that about October, 1894, the corporation was largely in debt and became insolvent. Money was borrowed and used in the construction of the building, and finally the directors, being unable to withstand the claims of creditors, called a meeting of the stockholders for February 20, 1895. At that meeting all the stockholders were present, either in person or by proxy, the assignor of the plaintiff having been present in person. The minutes of the meeting show that the financial condition of the corporation was fully considered, and a resolution adopted as follows: "Resolved, that it is the sense of this meeting that all the stock of the Salt Lake Amusement Association be called in and declared null and void, and a new issue of 2,000 shares be made at $10 per share, and that enough stock be set aside at that price to pay off the indebtedness, after which each stockholder shall take in such new issue of stock in proportion to the money in-

vested by him, and that 500 additional shares be held as treasury stock."

This resolution was signed by all the stockholders present at the meeting, including B. T. Pyper, the assignor, who signed it without any intimation that the corporation was indebted to him.    Pursuant to the resolution the old stock was called in, and the debts were found to be $16770, to pay which 1677 shares of the new stock were issued and sold at the par value of $10.00 per share, of which it appears one Rogers, for himself and friends, purchased 1000 shares.

After payment of such indebtedness there remained 323 shares, and on April 25, 1896, a letter was delivered to the secretary of the association, as follows:

"SALT LAKE CITY, UTAH, April 25, 1896.

"JOHN B. FORBES, Esq.,

"Sec'y Salt Lake Amusement Association.

"*Dear Sir:*—Replying to your communication, in which you state that there are three hundred and twenty-three (323) shares of the capital stock of the Salt Lake Amusement association ready for issue, in accordance with a resolution passed at a stockholders' meeting held February 20, 1895, permit us to say that we have only determined the division of said shares among ourselves in so far as Mr. Frank Maltese is concerned.    His interest, we have all agreed, is seven shares, and we hereby request that you issue, of said three hundred and twenty-three (323) shares, seven (7) shares to Mr. Frank Maltese.

In making this request we do not wish to be understood as in any way accepting these three hundred and twenty-three (323) shares as a final settlement of our claims for stock, except in so far as they represent what may be hereafter determined to be actually due us.

It is specially understood that the issuance of the seven

(7) shares of stock to Frank Maltese has no reference to, and does not include in any way, the interest which Julia S. Maltese has had in said association at any time prior to this date.

Respectfully,

BRIGHAM T. PYPER,
JANE T. PYPER,
MARY E. PYPER,
JOHN W. SNELL, JR.,
JULIA S. MALTESE,
FRANK MALTESE,
CHAS. N. PETERSON,
BRIANT S. YOUNG,
SALVATORE MALTESE.

On the same day another letter from the same parties, except Frank Maltese, was delivered. to the secretary, which was substantially the same as the one above quoted, except that it contained a clause, as follows: "The remaining three hundred and sixteen (316) shares being still undivided, we ask that a certificate be issued to Mr. Sam'l C. Park, trustee, to be by him held until our various interests have been finally determined."

In pursuance of the directions thus given 316 shares were issued to Samuel C. Park, as trustee, and afterwards by direction of the parties interested, including plaintiff's assignor, the certificate for the 316 shares was returned to the corporation, and the shares represented by such certificate issued in various amounts to various persons, according to such direction. During none of these stock transactions was there any claim made by said assignor that the corporation was indebted to him for services.

At the trial a verdict was returned in favor of the plaintiff, and judgment entered accordingly.

BARTCH, C. J., after stating the facts, delivered the opinion of the court.

Under the facts above set forth the appellant contends, among other things, that both the plaintiff and her assignor are estopped from now insisting on any demand, against the corporation, for compensation for the services in question. This contention appears to us to be well founded. Those services were performed, by the assignor, as an officer of the company, without any stipulation for compensation. As was said and admitted by counsel for the respondent in their brief, "he was an officer of the company and was evidently supposed to do whatever was necessary to be done. He continued his various duties as long as he was an officer, and when his official term ceased his employment ceased also."

It seems the other officers likewise performed duties, but it is not shown that any one of them ever claimed or received compensation therefor. Nor does it appear that the assignor was to be an exception. But whether, under all the evidence, he would have been entitled to compensation, notwithstanding there was no stipulation therefor, had not, through his own conduct, the rights of third parties intervened and rendered the payment of his claim inequitable, is not necessary to decide. It is shown by the evidence that the services, whatever they were, were performed without any agreement, as to whether or not the officer or assignor should be compensated therefor; that he was present at the meeting when the affairs of the corporation, which was insolvent, were discussed, and signed the resolution which provided for the payment of the entire indebtedness by the issuing and sale of new capital stock, upon the calling in of the old; that when he, with others, was notified that all the debts of the corporation had been paid by the sale of the new stock, he joined

with such others in directing the distribution and disposal of the remainder of the stock, without the slightest intimation that the corporation was indebted to him. He thus either negligently or willfully suppressed his claim against the corporation, and, after having lulled innocent persons into security that the stock which they were purchasing would be free from incumbrance, participated in the distribution of the very stock, which it would have been the duty of the board of directors to sell in payment of his claim, if it had been found valid. Having thus suppressed the true state of affairs of the corporation, it is clear that if he himself were suing upon his claim he could not be permitted to profit at the expense of innocent third parties who purchased stock at full value. He certainly could not be allowed to retain the stock, and also to recover upon his claim. How then can it be successfully contended that his assignee can sue and recover upon the claim, and he retain the stock which ought to have been sold in payment thereof? The assignee stands in no better plight than the assignor. What will estop him will estop her. It is idle to say that the purchaser of the stock, which was sold to pay off the indebtedness of the corporation, would not be injured by a recovery in this case. Their stock would be depreciated to the full extent of the recovery, and this would work an injury of which the assignor's inexcusable wrong or negligent conduct would be the efficient cause. Of this there can be no reasonable doubt. By his conduct the assignor represented to the purchasers that he had no claim against the corporation, and that their stock would be clear of incumbrance. These representations were material and calculated to induce persons to purchase the stock, and if loss results because of them, it is more just and equitable to cast the burden of the loss upon him in whose acts and

conduct it originated, than upon the purchasers of the stock who relied on the inducements held out to them that the entire indebtedness of the corporation would be paid by the sale of stock. The taking of the stock by, and conduct of, the assignor, under the circumstances, were calculated, even if not willfully designed, to mislead, and are good grounds of estoppel. Under the circumstances it was the duty of the corporation to protect the stockholders from the injury which would result from the assignor's own wrong, by refusing to pay the claim out of the corporate assets.

The assignor was not only standing by and participating in matters affecting the liabilities of the insolvent company, but, if his claim was well founded, actually suppressed the true state of affairs at a time when it was his duty to make a disclosure, and he and his assignee are therefore effectually estopped from asserting the claim against the corporation. Herman on Estoppel and Res Judicata, Secs. 952–954.

Having reached the conclusion that the respondent is estopped, because of the acts and conduct of her assignor, from asserting the claim in question against the corporation, it becomes unnecessary to consider the other points presented.

The judgment must be reversed, with costs, and remanded with directions to the court below to dismiss the action.

It is so ordered.

BASKIN, J., concurs.

I dissent, and base my dissent upon the facts as shown by the abstracts.

MINER, J.