## McGuire v. Carroll Construction Company, et al.

(Decided November 13, 1917.)

### Appeal from Pike Circuit Court.

Estoppel—By Silence—What Will Amount to.—Where a party keeps silent as to the existence of a claim when he is under a duty to speak and other parties are misled to their prejudice by his silence, he will be estopped to successfully assert the claim against the parties who were prejudiced by his conduct and who were ignorant of the existence of the claim that he afterwards sought to compel them to pay.

CLINE & STEELE, W. K. STEELE and J. S. CLINE for appellant.

J. R. JOHNSON, JR., and J. M. YORK for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

Previous to 1911 the Carroll-McGuire Contracting Co. was organized as a corporation under the laws of Virginia. W. S. Carroll was the president and treasurer, and F. H. McGuire secretary and general manager of the corporation. F. H. McGuire gave his brother, H. H. McGuire, a share of stock to qualify him as a director.

The only stockholders were Carroll and the two Mc-Guires, who were also the directors of the company.

It appears that this corporation was organized for the purpose of doing railroad construction work, and that on January 9, 1911, the corporation, by F. H. McGuire, who signed his name as secretary and treasurer, executed a note to his brother, H. H. McGuire, for $877.19. On August 25, 1911, H. H. McGuire filed suit on this note against the Carroll-McGuire Contracting Co., the Carroll Construction Company, and other parties, but in the view we have taken of the case, it will not be necessary to refer to the other parties.

To this suit the Carroll Construction Co. and the other parties filed an answer putting in issue the allegations of the petition; charging that there was no consideration for the execution of the note, that it was procured by fraud, and that H. H. McGuire was estopped by his conduct from maintaining the action.

On a hearing of the case, after the issues had been made up and the evidence taken, the lower court dismissed the suit of McGuire upon the ground that his right of action was barred by estoppel, and he has appealed.

It appears from the evidence of the two McGuires that H. H. McGuire was employed by his brother, F. H. McGuire, as assistant manager and foreman of the company, which at the time was engaged in some railroad construction work in Ohio, and they both testify that the note sued on was executed as evidence of the amount due H. H. McGuire for salary and for money advanced by him to the company. It further appears that Carroll, the president of the company, gave little attention to its affairs and was only present occasionally where the work was being done in Ohio.

It is further shown that in April, 1911, by agreement of the stockholders of the Carroll-McGuire Contracting Co., additional stock was issued to one Marshall and it was agreed that the name of the company should be changed to the Carroll Construction Co. Afterwards, on August 18, 1911, there was a further agreement between the stockholders by which F. H. McGuire surrendered his stock in the company to the other stockholders and withdrew therefrom, and the share held by H. H. McGuire was surrendered to W. S. Carroll, and both of the Mc-Guires in this way severed their connection with the Carroll Construction Co., which, as we have said, was the successor of the Carroll-McGuire Contracting Co.

It was also provided in this agreement that F. H. McGuire should be released from any liability on account of obligations issued by either of these companies. The two McGuires were present at the meeting held on August 11, 1911, at which they surrendered their stock and severed their connection with the company in consideration of the release of F. H. McGuire from liability for the debts of both of the companies. And it was at this meeting that the lower court found that H. H. McGuire was guilty of such conduct as would estop him from maintaining a suit on this note.

It is further shown by the evidence that at this August meeting at which Carroll, the two McGuires, Marshall, and probably others, were present, a statement was made up showing the liabilities of these two companies, in order that the stockholders in the new company might know the financial condition of the Carroll Construction Co., which had apparently assumed the liabilities of the Carroll-McGuire Contracting Co. But, although one of the objects of the meeting was to ascertain the liabilities of these companies, neither of the McGuires, who were present, disclosed the existence of this note that F. H. McGuire had executed to his brother in January of the same year, nor was the fact that such a note was in existence known by either Carroll or Marshall or any other persons then interested in the company, as it appears that no one was present when the note was executed except the two McGuires and an attorney in Ohio, who had something to do in making a settlement between them.

H. H. McGuire testifies that he was present at this meeting, and that he purposely failed to disclose that he had a note against the Carroll-McGuire Contracting Co., although it is plain that he must have known—and the circumstances show that he did know—that one of the objects and probably the chief object of that meeting was to ascertain the indebtedness of these companies, in order that the new stockholders might know the financial condition of the company.

F. H. McGuire testifies that when he executed the note to his brother, the Carroll-McGuire Contracting Co. was insolvent and some of the creditors had brought suits and attached its property.

Carroll testified that at this August meeting, at which Marshall, who had become a large stockholder in the Carroll Construction Co., was present, there was a gen-

eral discussion of the financial affairs of the companies, and that after all of the liabilities except the note that were known by the parties, had been disclosed, and each of the McGuires had been asked if that was all of the indebtedness of the companies, and they had replied that it was, they were released from liability. That neither of them disclosed in any manner the existence of this note, but, on the contrary, said, in response to inquiry, that there were no other obligations of the companies known to them except those disclosed at the meeting. That he had no notice whatever of the existence of this note until suit was brought on it, but that he did have knowledge of the other indebtedness of the companies.

There is some other evidence in the record tending to show that there was no consideration for this note and that the reputation of the McGuires for honesty and truthfulness was bad; but we think an affirmance of the judgment may well be rested on what happened at this August meeting. The McGuires knew that one of the principal objects of this meeting was to ascertain the financial condition of these companies, and on the faith and credit of the assumed fact that full disclosures had been made of the entire liabilities of the companies, F. H. McGuire was released from any liability with which he might be chargeable on account of the debts due by the companies.

In the agreement made between Carroll, Marshall and McGuire in April, 1911, it was stipulated that Carroll and Marshall agreed to assume and pay all the obligations of the Carroll-McGuire Contracting Co., and to save that company and McGuire harmless from all claims of every character and description against that company. And in the agreement made in August, 1911, when the McGuires surrendered their stock and severed their connection with the Carroll Construction Co., which, as we have said, was merely organized to take the place of the Carroll-McGuire Contracting Co., it was stipulated that Carroll and Marshall, in consideration of the surrender of the stock by F. H. McGuire, should release and discharge him from all liability on account of obligations due by the Carroll-McGuire Contracting Co.

It will thus be seen that in this settlement made in August, 1911, Carroll and Marshall assumed all the liabilities of the Carroll-McGuire Contracting Co. and that F. H. McGuire was released from all liability on account of the indebtedness of this company. Under these circumstances it was plainly the duty not only of F. H. Mc-

Guire, but of his brother, H. H. McGuire, who was present and at this time a stockholder in the Carroll-McGuire Contracting Co., to have disclosed this note, the existence of which was known at that time only to them. It is true that H. H. McGuire was not relieved from any liability by the terms of the agreement, but this was so only because he was what may be called a "dummy" stockholder and director, as the one share of stock that he held had been given to him by his brother to quality him as a director.

The two McGuires were acting in concert and both of them were endeavoring to and did conceal the existence of this note, although they both were under a duty to bring it to the attention of those present at the meeting, and it is fair to assume from all the facts and circumstances that if they had done so, F. H. McGuire would not have been released from liability, and that Carroll and Marshall would then and there have taken different action from what they did. It is also manifest that the McGuires concealed the existence of this note for fear that if they disclosed its existence the agreement by which F. H. McGuire was released from liability would not have been consummated.

Considering the doubtful justice of the note, as well as what transpired at this meeting, we think the lower court correctly held that H. H. McGuire was estopped from enforcing its collection, and the judgment is affirmed.