[Civil No. 2301.  Filed June 27, 1925.]

[237 Pac. 642.]

LIZZIE MOELLER BRANDON, Appellant, v. MINNIE CARR and GRIGGS H. CARR, Her Husband, Appellee.

1. APPEAL AND ERROR—ERROR IN PERMITTING PLAINTIFF TO ESTIMATE HER DAMAGES HELD HARMLESS, WHERE CORRECT MEASURE OF DAMAGES GIVEN IN INSTRUCTION.—Error in permitting plaintiff, in suit on contract of agency, to estimate her damages to be contract salary; *held* harmless, where court correctly stated measure of damages.

2. APPEAL AND ERROR—PROMPT STRIKING OF TESTIMONY BECAUSE NOT RESPONSIVE, OR CONCLUSION, SUFFICIENT ADMONITION TO JURY TO DISREGARD IT.—Action of court in promptly ordering testimony stricken because answer was not responsive, or was witness' conclusion, is sufficient admonition to jury not to consider it.

3. ESTOPPEL—TESTIMONY THAT DEFENDANT'S HUSBAND TRICKED HER INTO SIGNING LETTER, AUTHORIZING PLAINTIFF TO PAY HUSBAND'S INSURANCE POLICIES FROM DEFENDANT'S MONEYS, HELD PROPERLY EXCLUDED, SINCE SHE AND NOT PLAINTIFF SHOULD BE MADE TO SUFFER LOSS RESULTING. — Where plaintiff paid premiums on defendant's husband's life insurance policies, from rents collected from defendant's premises, pursuant to alleged written permission of defendant in letter signed by her, court properly refused to permit defendant to show that husband tricked her by substituting a page of letter, since she and not plaintiff should be made to suffer whatever loss resulted.

---

2.  See 26 R. C. L. 1055.

4. TRIAL—INSTRUCTION HELD ABSTRACT.—In action for breach of contract of agency, where sole question was whether plaintiff had failed to account for funds coming into her hands, as manager of defendant's properties, instruction as to plaintiff's doing or not doing her work as housekeeper and manager was abstract.

5. APPEAL AND ERROR — INSTRUCTION HELD MORE FAVORABLE TO DEFENDANT THAN SHE WAS ENTITLED TO.—In action for breach of contract of agency, where only breach charged against plaintiff was her failure to account for funds coming into her hands, an instruction that, if plaintiff violated any provision of contract, she could not recover, was more favorable to defendant than she was entitled to.

6. APPEAL AND ERROR — HUSBAND AND WIFE—INSTRUCTION HELD ERRONEOUS, BUT NOT PREJUDICIAL.—Where plaintiff paid premiums on defendant's husband's insurance policies, from moneys of defendant, in alleged reliance on authority from defendant, there being no testimony that payment was made in obedience to any directions of defendant's husband, an instruction that plaintiff was justified in making payment upon authority either of defendant or her husband was erroneous but not prejudicial.

7. TRIAL—INSTRUCTIONS NOT WITHIN ISSUES, OR WITHOUT SUPPORT IN EVIDENCE, PROPERLY REFUSED. — Instructions, which broadly authorized jury to pass on questions not in issue or without support in evidence, *held* properly refused.

8. TRIAL—INSTRUCTED VERDICT SHOULD NOT BE GIVEN IF EVIDENCE IN DISPUTE; WEIGHT OF CONFLICTING EVIDENCE FOR JURY.—An instructed verdict should not be given if evidence is in conflict, since in such case it is for jury to weigh evidence and decide which of contending parties is right.

9. PRINCIPAL AND AGENT—BREACH OF EMPLOYMENT CONTRACT HELD FOR JURY. — In action for breach of contract of agency for management of real estate, conflicting evidence *held* to make case for jury.

See (1) 4 **C. J.**, p. 994, n. 54.    (2) 4 **C. J.**, p. 989, n. 16.    (3) 21 **C. J.**, p. 1170, n. 67.    (4) 38 Cyc., p. 1614, n. 17.    (5) 4 **C. J.**, p. 920, n. 53.    (6) 4 **C. J.**, p. 1029, n. 30; 30 **C. J.**, p. 1035, n. 47.    (7) 38 Cyc., p. 1613, n. 16.    (8) 38 Cyc., p. 1439, n. 46, p. 1516, n. 57. (9) 2 **C. J.**, p. 959, n. 94.

APPEAL from a judgment of the Superior Court of the County of Maricopa. M. T. Phelps, Judge. Affirmed.

7.  See 14 **R. C. L.** 785.
8.  See 26 **R. C. L.** 1067.

Messrs. Zimmerman & Mulhern, for Appellant.

Mr. H. B. Shoemaker and Mr. Harold Baxter, for Appellees.

ROSS, J.—This is an action for damages for breach of contract, brought by Minnie Carr and her husband, Griggs H. Carr, against Lizzie Moeller Brandon and her husband, W. Lee Brandon. The husbands are nominal parties, and are brought into the case only because of the marital relation.

On April 10, 1923, Lizzie Moeller Brandon, herein referred to as defendant, and Minnie Carr, herein referred to as plaintiff, entered into a contract in writing (a copy of which is attached to the complaint) by the terms of which the defendant employed the plaintiff for one year from April 15, 1923, as manager and housekeeper of the Mission Apartments, and to look after some other property, located in Phoenix, belonging to defendant, the plaintiff on her part, among other things, agreeing:

"To faithfully serve the said Lizzie Moeller Brandon to the best of her ability, and to perform all the duties incident to keeping the Mission Apartment House rented, cleaned, and heated. To collect all rents, and to pay all bills as they become due. To deposit the balance of all moneys as collected to the credit of Lizzie Moeller Brandon in the Phoenix National Bank. To keep a true and correct account of all moneys received and all expended, and to render a monthly statement of accounts to said first party. . . . Party of the second part further agrees to look after all other property of Lizzie Moeller Brandon in the city of Phoenix, Arizona, and to work to the best of her ability to keep places rented and to collect all rents and place same as collected to the credit of Lizzie Moeller Brandon in the Phoenix National Bank."

For such services defendant agreed to pay plaintiff $50 cash per month, and to allow her, rent free, to

occupy apartment No. 4 of the Mission Apartments, the reasonable rental value of which is alleged to be $50 per month.

It is alleged that plaintiff entered upon the performance of her part of contract, and kept and performed it and all covenants therein for four months, or until August 17, 1923, and was ready, willing, and able to carry it to completion, but that defendant, on August 18th, wrongfully terminated the contract, took possession of premises and notified plaintiff to vacate. The damages claimed in complaint consist of loss of salary for the uncompleted term of eight months, at $50 per month, and the reasonable value of apartment No. 4 at $50 per month for eight months, or all told $800.

The answer admitted the contract, but denied plaintiff had kept and performed all or any of the covenants and agreements on her part to be kept and performed, and alleged that defendant terminated the contract and took possession on August 18th "by reason of the fact that the said plaintiff had, prior to said time, violated the rules and provisions of said contract," and that on said date she in writing demanded of plaintiff an accounting "for all moneys taken by her and belonging to defendant." The defendant also filed a cross-complaint alleging that plaintiff, between April 10 and August 18, 1923, had collected rentals, and had failed to account for $338.72 thereof, and had failed and refused to return to defendant certain contents of house of the value of $50, and prayed judgment against plaintiff for such sums. A general denial to the cross-complaint was filed.

The case went to trial before a jury upon the issues thus formed; the plaintiff insisting that she had faithfully and well performed her part of the contract, and that defendant had wrongfully breached it, whereas defendant as strenuously contended that

plaintiff had collected rentals for which she had failed to account, or had misapplied, thereby giving cause for the termination of the contract. One of the conditions of the contract was that defendant could terminate it by giving the plaintiff two weeks' notice in writing, if she found the latter had violated the rules and provisions thereof. The evidence is that defendant, on August 18th, sought to terminate the contract by giving plaintiff this notice, and while other reasons than failure to account were assigned in notice, they were all abandoned on the trial, or failed for lack of supporting evidence.

The defendant, testifying in her own behalf, said:

"The reason why I let Mrs. Carr go is because she did not put my money in the bank as she agreed to, and she paid Mr. Brandon's insurance that I did not know who it was payable to, . . . and she used money herself, and drew it, and overdrew, after I had paid her $200 in advance. . . . I did not have any fault to find with her work."

Thus it was admitted by defendant that she terminated the contract under · claim of right to do so because the plaintiff had not accounted for or had misapplied a portion of rentals collected.

The jury assessed damages in favor of plaintiff in the sum of $600, and judgment was rendered thereon. The defendant appeals, and assigns some twelve errors.

The first is as to the admission of some evidence, but, since it went without objection, it is not necessary to state it or to rule on the assignment.

The plaintiff, testifying, was permitted, over objection, to estimate her damages at the contract salary of $50 per month for the uncompleted term of eight months. This, we think, was error, but the court in the instruction correctly stated the measure of damages to be "the compensation that plaintiff would have earned under the contract from the date of her

discharge to the expiration of the term of the contract, less whatever amount she had earned or might earn in employment in the same line of business by the use of reasonable diligence to find such work." *Granow* v. *Adler,* 24 Ariz. 53, 206 Pac. 590. And even though the plaintiff did state her damages to be the contract salary, the instruction qualified or explained the rule, so that such statement must have been harmless.

The other element of damage claimed by plaintiff was the depriving her of the use of apartment No. 4 for the last eight months of the contract, and the reasonable value of such use was proved by unobjectionable evidence.

The failure of the court to admonish the jury not to consider testimony the court had held improper and had, on defendant's motion, stricken, is next assigned as error. In every instance cited, where the court ordered testimony stricken, it was because the answer of the witness was not responsive, or was his conclusion, and the promptness with which the court ruled when asked to do was, it seems to us, sufficient admonition to the jury not to consider it. If the complaint was that the court had admitted testimony apparently relevant at the time, but the subsequent developments disclosed was irrelevant, then a positive direction to the jury to disregard it would not only have been proper but necessary.

Assignments four and five are also directed at the court's rulings in limiting the cross-examination of plaintiff and in not permitting defendant to show that a certain letter, purporting to authorize plaintiff to pay life insurance premiums, was not wholly genuine. It is necessary to state some of the admitted facts in order to understand these assignments.

Lee Brandon, husband of defendant, had two life insurance policies, upon each of which a premium fell

due during the first four months of plaintiff's contract. He was very anxious to have these premiums paid out of the rentals collected from defendant's property, and, defendant not knowing, as she says, to whom policies were payable, was unwilling to pay premiums. Immediately after plaintiff entered upon the discharge of her contract, the defendant and her husband went to Long Beach, California, and plaintiff kept in touch with them by correspondence. She mailed to defendant monthly statements of her accounts, and received letters from both defendant and her husband. The plaintiff knew, through both defendant and her husband, and from advices sent her by defendant, of the insurance premiums, and of the diversity of wishes of defendant and her husband as to their payment. In May plaintiff paid one of such premiums for $79.77, and in her statement of account to defendant for that month credited herself with it. On July 23d she paid the other premium of $163.60, relying for authority so to do upon a letter dated June 22d, written and mailed at Long Beach, signed by defendant, telling her "to pay Lee's insurance policy." It seems that this letter was written by the husband, and consisted of two pages; defendant's signature being on the last page. It is contended by defendant that the first page, when she saw it, did not contain the above instruction, and she therefore wanted to prove that her husband had tricked her by substituting the first page. This the court would not permit her to do. She admitted her signature. If her husband took advantage of her confidence in him and tricked her, she, and not the plaintiff, should be made to suffer whatever loss resulted.

Defendant had written one Dan Massey to tell plaintiff not to pay the last premium, and while plaintiff was on the witness-stand she was asked if Dan Massey had informed her thereof. This cross-

examination was objected to and sustained. We do not know why, except it be that the information sought was already plentifully before the court and jury.

Assignments six, seven and eight are complaints of the court's instruction. One of such instructions was intended to advise the jury that it was necessary for the plaintiff, before she could recover, to show that contract was terminated by defendant without right, and that plaintiff was not at fault. As given, it was in substance that, if the jury found plaintiff had performed her work according to the terms and provisions of contract, and was ready, willing and able to carry it out, but that it was rescinded by defendant, and plaintiff thereby prevented from continuing to keep and perform it, then the contract was not breached by plaintiff.

In view of the evidence, we think this instruction more or less abstract. There was no question about plaintiff's doing or not doing her work as housekeeper and manager of the defendant's properties. It was apparently conceded all the way through that she did her work well and satisfactorily. The sole question was as to whether she had failed to account for funds coming into her hands. The defendant canceled the contract—so admitted in answer and cross-complaint—and contended she was right in doing so.

The next instruction is subject to the same criticism. It was to the effect that, if the plaintiff had violated any of the rules or provisions of contract, the defendant was within her rights in giving two weeks' notice of a termination of the contract, and plaintiff could not recover. Instead of pointing out to the jury the only breach charged against plaintiff of which there was any evidence, to wit, a failure to account, and stating the rule governing the situation, the jury were here told if plaintiff violated any rule

or provision of the contract, whether assigned or not, she could not recover. This was very much more favorable to defendant than she was entitled to.

The court instructed the jury that plaintiff was justified in paying insurance premiums upon the authority of either the defendant or Lee Brandon, her husband, since the presumption of law was that the property she was managing belonged to the community, in the absence of proof to the contrary. The only evidence as to whose property it was is found in the contract itself. In terms, the contract of employment describes the property plaintiff was to manage as the property of defendant Lizzie Moeller Brandon. In view of the course of dealing between plaintiff and defendant, it may be doubted if the law would permit plaintiff to apply money collected from properties to any other use than provided in contract, except upon the express or implied authority of defendant. However, the plaintiff relied upon authority from defendant to pay premiums, and not upon any directions, or instructions from Lee Brandon. The latter did not directly assume authority over the funds plaintiff collected for rentals, but sought, as the husband of defendant, by persuasion and otherwise, to have them applied to his uses. There was no testimony that plaintiff paid out moneys on premiums in obedience to any orders or directions of Lee Brandon, and therefore the part of the instruction formulated to meet such contingency finds no warrant in the evidence. We conclude the instruction was erroneous but not prejudicial.

The ninth and tenth assignments complain of the court's refusal to give certain requested instructions. These instructions were properly refused, principally for the reason that they submitted for the jury's consideration and determination questions, well enough within the pleadings perhaps, but outside the evi-

dence. They were not confined to the contested issues of fact, but broadly authorized the jury to pass upon questions not in issue or without support in the evidence.

Complaint is made of the court's refusal to instruct a verdict in defendant's favor at the close of the case, upon her motion. This motion presupposes that plaintiff had not made out a case and had not been aided in that regard by the evidence of defendant. If the evidence is in dispute, or in conflict, an instructed verdict should never be given. In such case it is for the jury to weigh the evidence and decide which of the contending parties is right. *Arizona Binghampton C. Co.* v. *Dickson,* 22 Ariz. 163, 195 Pac. 538. Whether plaintiff rightfully paid the premiums on Lee Brandon's life insurance or not depends upon the disputed fact of authority from defendant. Plaintiff testified she had verbal instructions from defendant to pay such premiums, given to her before defendant went to Long Beach, and she also exhibited a letter from defendant conferring such authority. Plaintiff claimed defendant never by letter nor word of mouth countermanded such instructions. Defendant, on the contrary, claimed the letter was not genuine, and that she did not give verbal instructions to plaintiff to pay premiums. In addition to the dispute over the premiums, defendant claimed plaintiff overpaid herself in the sum of $50. This was disputed by the plaintiff. All these questions were submitted to the jury and decided against the defendant.

We admit this has been a most difficult case to dispose of to our satisfaction, but it seems to us, from a careful inspection and consideration of the entire record, that the result reached is substantially right, and that an affirmance is in the interests of justice. It is so ordered.

McALISTER, C. J., and LOCKWOOD, J., concur.