[Civil No. 2794. Filed March 3, 1930.]

[285 Pac. 263.]

## M. F. GREEN, Appellant, v. GILA WATER COMPANY, a Corporation, Appellee.

Messrs. Chalmers, Fennemore & Nairn, Mr. J. Early Craig and Mr. Henry W. Allen, for Appellant.

Mr. W. L. Barnum, for Appellee.

LOCKWOOD, C. J.—On December 8, 1913, C. F. Ainsworth, who was then president and one of the stockholders of the Gila Water Company, a corporation, which is hereinafter called defendant, gave his personal check for $2,136.29 in payment of taxes on certain land then belonging to the Santa Fe Pacific Railway Company, but under option from its owner to defendant and assessed in the name of the latter. There was not sufficient money in the bank to meet the check, but it was paid and carried as a cash item. At that time and thereafter until the spring of 1919 the entire issued stock of defendant belonged to Ainsworth and to members of his immediate family, except that E. J. Bennitt, plaintiff's assignor,

was a nominal stockholder and at times acted as a director and officer of defendant. In February, 1914, Bennitt executed his personal note to the Valley Bank to take up the check of Ainsworth aforesaid; and on October 28th, 1914, the latter as president, and Robert Craig, his son-in-law, as secretary of defendant executed the note sued on in this action in favor of Bennitt to pay him for taking care of the check. On the twenty-fourth day of March, 1919, Bennitt was the owner and holder of the note and was at that time a director and treasurer of defendant. The option on the lands referred to above had long since expired without being taken up, and the Santa Fe Pacific Railway Company had given an option thereon to one J. C. Adams, which was assigned to W. J. Murphy. Thereafter, Murphy obtained an option from the Gila Water Company to purchase all its assets, and on said twenty-fourth day of March entered into a contract with one F. A. Gillespie under the terms of which Gillespie was to pay one million dollars for the entire capital stock of defendant, which money was to be used: Six Hundred and fifty thousand dollars in the construction of a dam and canal; one hundred thousand dollars to secure the title to the Santa Fe Pacific lands; and the balance to be paid to Murphy under certain conditions. The contract also contained the following clause:

"10. The second party agree there is to be no liabilities against the Gila Water Company at the time of the completion of the Dam, and canal unless the cost exceeds the $1,000,000.00 or cost more than the amount agreed to in this contract; in any event the personal liabilities of the second party cease on the acceptance and completion of the dam."

This contract was duly ratified by defendant on the date of its execution. At such time Bennitt was present and knew of the entire agreement and trans-

action, but said nothing of the note he held. On the twelfth day of May, 1919, the board of directors of defendant met, Bennitt being present and acting as secretary of such meeting. At this meeting Ainsworth as president stated to the board of directors in the presence of Gillespie and Bennitt that, upon the payment of certain indebtedness due the Valley Bank, all the obligations of defendant would be settled; whereupon Gillespie paid to Murphy one hundred and forty thousand dollars, and to Ainsworth fifty thousand dollars, out of which they were to pay and discharge all the debts of the Gila Water Company. Bennitt was present and heard these statements, but neither then nor at any time did he notify Gillespie, Ainsworth, Murphy, or the directors of defendant that he held the note in question or that he claimed any indebtedness from defendant on account of the note; nor did Gillespie have any knowledge of its existence, until the year 1927, when, the latter being about to sell his stock in defendant to another party, Bennitt notified defendant of the note and demanded payment. Thereafter, he assigned it to M. F. Green, plaintiff herein, for collection, and suit was brought thereon in the usual form. The case was tried to the court sitting without a jury, and various findings of fact were made from which the conclusion of law was drawn that Bennitt was estopped from asserting or enforcing any claim on account of the note sued on. Judgment was duly rendered in accordance with the findings of fact and conclusion of law, and, after the usual motion for a new trial was denied, an appeal was taken to this court.

There are some twenty-one separate assignments of error, but they present in effect but three legal propositions, and we shall consider them in that manner and not seriatim. The first is that under the circumstances set forth above defendant may not

claim an estoppel. The second is that certain findings of the court are not supported by the evidence. And the third is that the court erred in admitting certain evidence.

It is urged by plaintiff that an estoppel operates only between parties and privies, and the party who pleads it must be one who has in good faith been misled to his injury. This, as a general proposition of law, is undoubtedly true. But the conclusion of plaintiff that defendant cannot avail itself of this defense, because it was bound to know and did know that the note in question existed and had not been paid, does not necessarily follow. In the case of *Pyper* v. *Salt Lake Amusement Assn.*, 20 Utah 9, 57 Pac. 533, 535, the essential facts were the same as those in the case at bar. In the case cited, plaintiff's assignor was an officer of the corporation and performed certain services for it for which he claimed to be entitled to compensation. After the corporation became involved in difficulties it was agreed that new stock be issued and sold. Pyper agreed to the resolution, and gave no intimation at the time that the corporation was indebted to him. Thereafter, new stock was sold to various parties, and during none of these transactions was any claim made by Pyper that the corporation owed him. The corporation was later sued by Pyper for the value of the services in question, and the defense of estoppel was set up as in the present action. The court, in passing upon the case and referring to Pyper's actions, stated:

"He thus either negligently or willfully suppressed his claim against the corporation, and after having lulled innocent persons into security that the stock which they were purchasing would be free from incumbrance, participated in the distribution of the very stock which it would have been the duty of the board of directors to sell in payment of his claim, if it had been found valid. Having thus suppressed

the true state of affairs of the corporation, it is clear that, if he himself were suing upon his claim, he could not be permitted to profit at the expense of innocent third parties who purchased stock at full value. . . . It is idle to say that the purchasers of the stock, which was sold to pay off the indebtedness of the corporation, would not be injured by a recovery in this case. Their stock would be depreciated to the full extent of the recovery, and this would work an injury of which the assignor's inexcusable wrong or negligent conduct would be the efficient cause. Of this there can be no reasonable doubt. By his conduct the assignor represented to the purchasers that he had no claim against the corporation, and that their stock would be clear of incumbrance. These representations were material, and calculated to induce persons to purchase the stock, and, if loss results because of them, it is more just and equitable to cast the burden of the loss upon him in whose acts and conduct it originated than upon the purchasers of the stock, who relied on the inducements held out to them that the entire indebtedness of the corporation would be paid by the sale of stock. The taking of the stock by and conduct of the assignor, under the circumstances, were calculated, even if not willfully designed, to mislead, and are good grounds of estoppel. Under the circumstances, it was the duty of the corporation to protect the stockholders from the injury which would result from the assignor's own wrong by refusing to pay the claim out of the corporate assets. The assignor was not only standing by and participating in matters affecting the liabilities of the insolvent company, but, if his claim was well founded, actually suppressed the true state of affairs at a time when it was his duty to make a disclosure, and he and his assignee are therefore effectually estopped from asserting the claim against the corporation.''

A somewhat similar situation existed in the case of *Randall* v. *Rhode Island Lumber Co.,* 20 R. I. 625, 40 Atl. 763, 764, and the court stated:

"The purchasers of the stock, who are now the company, made the purchase on the basis of assets and liabilities as shown by the books. While this was going on, the plaintiff knew of the proposed purchase, and, although the note had been overdue and unpaid for more than a year and a half, he kept it secret until E. R. Randall notified him that he had got out the company, and then he made his demand for payment. To enforce the payment of the note under these circumstances would be a gross fraud upon the purchasers of the stock, and they are now the company. . . . The plaintiff was clearly in fault in keeping the note secret, while he knew that negotiations were going on to restore the company to active business. . . . The fact that the corporation is a distinct entity does not affect the justice of the case. The stockholders are practically the corporation, and a wrong to one is a wrong to the other."

And in *McGuire* v. *Carroll Const. Co.,* 177 Ky. 675, 198 S. W. 6, the facts and the holding were similar in legal effect. We have been cited to no cases in which, under anything like similar circumstances, it has been held that defendant corporation could not set up the plea of estoppel for the benefit of its then stockholders. We conclude, therefore, that on reason and authority the facts found by the court would justify defendant in claiming an estoppel against Bennitt, and necessarily against his assignee for collection, the nominal plaintiff.

The next question is whether or not the evidence supports the findings of the trial court. Without going into the details, we are of the opinion that the evidence presented in the trial court is sufficient to support all the findings made which are necessary to sustain the judgment. A number of the findings objected to, in view of our opinion as to the law of the case, are immaterial, and we need not, therefore, consider them.

The third question is as to the admissibility of certain evidence upon which some of the vital findings

are necessarily based. The theory of plaintiff upon this point apparently is that the written contract of March 24th, 1919, did not provide for the payment of the debts of defendant then existing, out of the proceeds of the sale to Gillespie; and that any attempt to show such an agreement by parol was incompetent, because it would be a variation of the written contract. We think no such variation is shown by the evidence admitted. It is urged that section 10, *supra,* plainly implies all the existing liabilities of defendant were to be paid by Gillespie unless the dam cost more than the amount provided in the contract. We are of the opinion that section was meant only to prohibit Gillespie from incurring future liabilities to be charged against defendant, unless the cost of the undertaking exceeded the million dollars he was to pay. Such being the case, it was permissible to show by parol evidence the statements of Ainsworth regarding the debts of defendant on May 12th; that the note sued on was not brought to the notice of Gillespie, the purchaser of the stock; and that Bennitt stood by and remained silent under circumstances when it was his duty to speak. In view of the excellent reputation of the latter, it is possible, if not probable, that his failure to disclose the facts was due to a misconception on his part and not to any deliberate intent to defraud. The transactions between defendant and the Valley Bank were numerous and extended over a long period of time, and it is entirely reasonable to suppose that at the time of the meeting on May 12th Bennitt was under the impression that the actual indebtedness was to the bank and was included in the amount mentioned by Ainsworth. But when one of two innocent parties must suffer, the one to whose negligence the loss is due must bear the burden. *Hughes* v. *Riggs Bank,* 29 Ariz. 44, 239 Pac. 297.

There are a number of other objections made by appellant, but we consider it unnecessary to discuss them, as under our view of the law they are immaterial, even if well taken.

There being no reversible error in the record, the judgment of the superior court is affirmed.

McALISTER and ROSS, JJ., concur.