[Civil No. 3706. Filed April 20, 1936.]

[56 Pac. (2d) 1041.]

H. D. HALLENBECK and KATHERINE A. HAL-
LENBECK, Husband and Wife, Appellants, v.
.REGIONAL AGRICULTURAL CREDIT COR-
PORATION OF SALT LAKE CITY, UTAH, a
Corporation, Appellee.

478

Mr. Fred L. Ingraham, for Appellants.

Mr. William H. Westover, for Appellee.

ROSS, J.—The appellee, Regional Agricultural Credit Corporation of Salt Lake City, Utah, on October 4, 1933, loaned to appellants, H. D. Hallenbeck and Katherine A. Hallenbeck, husband and wife, the sum of $1750 and took their promissory note therefor, due three months after date, bearing interest at 6½% per annum, and as security for its payment accepted two warehouse receipts issued by the Alfalfa Seed & Lumber Company of Yuma for 35,215 pounds of No. 1 alfalfa seed.

This action was filed December 3, 1934, and is for a balance of $497.70 and interest and an attorney's fee of $150. Defendants' answer denies that there is any balance owing plaintiff and alleges that on or about

December 28, 1933, plaintiff appointed the Alfalfa Seed & Lumber Company (warehouseman) its agent to "disperse" the alfalfa seed and to collect six cents per pound therefor, and that said agent made collections in the sum of $2,112.90, sufficient to pay the note in full together with all interest.

The case was tried before the court without a jury and at its close judgment was rendered in favor of the plaintiff for the balance sued for, together with interest, and an attorney's fee of $50. Defendants have appealed.

The vital question is whether the plea of payment has been sustained by the defendants.

The complaint admits the defendants have paid on the principal of the note $1252.30, as follows:

| | | |
|---|---|---|
| March | 1, 1934 | $566.75 |
| March | 3, 1934 | 146.50 |
| March | 7, 1934 | 351.75 |
| March | 10, 1934 | 187.30 |

and that such payments were made by the Alfalfa Seed & Lumber Company. This admission is contained in a letter from the plaintiff to the defendants. The evidence also shows that the Alfalfa Seed & Lumber Company sold all of the pledged property but failed to remit to plaintiff any sum above $1,252.30.

The authority of the Alfalfa Seed & Lumber Company to sell the alfalfa seed is involved and, if it is settled that it had authority to sell, the next question is whose agent under the circumstances was it, and who should suffer for its defalcation. Bearing directly upon these questions is the following correspondence between plaintiff and defendants. The first of such letters was written by defendant H. D. Hallenbeck to plaintiff and reads:

"Wellton, Arizona, Dec. 27, 1935.
"Regional Agricultural Credit Corporation
    "Phoenix Branch,
        "Phoenix, Arizona.
"Gentlemen:
    "I am negotiating with E. F. Sanguinetti of Yuma, Arizona, for the handling of my alfalfa seed amounting to some 36,000 lbs., covering which you hold warehouse receipt issued by the Alfalfa Seed & Lumber Co., and on which you have extended me a loan in the sum of $1750.00.
    "I should like to arrange whereby such tonnage of seed that Mr. Sanguinetti will dispose of may be released to him upon payment to you for the seed as it is withdrawn at the rate of 6c a lb. This amount could either be mailed to you direct, or paid to the Alfalfa Seed & Lumber Co. for your account, whom you could instruct to deliver such seed as is sold upon payment to them for your account at the rate of 6c a lb.
    "This would be the simplest manner in which this could be handled; it would facilitate very much the marketing of my alfalfa seed crop. Would appreciate hearing from you at your early convenience touching on the above, and oblige."

Plaintiff's response to the above was as follows:

"December 28, 1935.
"Alfalfa Seed & Lumber Co.,
    "Yuma, Arizona.
"Gentlemen:
    "We hold the following Warehouse Receipts, issued by you and endorsed by H. D. Hallenbeck, as security for a loan to him.
        #4357—31102#—#1 Alfalfa Seed
        #4558— 4113 —#1     "        "
    "This will be your authority to release any part of this seed to the order of H. D. Hallenbeck upon receipt of 6¢ per pound on seed released to be remitted to us after deducting your storage charges on the seed released.
                    "Yours very truly,
                        "FRANK McNICHOL,
                            "Acting Manager.
    "FMcN:EC.
    "cc: Mr. Sanguinetti."

Following these two letters plaintiff wrote several letters to defendants recognizing the agency of the Alfalfa Seed & Lumber Company to sell the pledged property and acknowledging remittances which it applied on note in part payment. The letters from plaintiff to defendants were signed by Frank Mc-Nichol as "Acting Manager," "Manager Arizona Division" and one of such letters was signed by him as "Assistant Manager." It was he through whom the loan was negotiated and the warehouse receipts pledged as security.

Much of the trial, too much indeed, was taken up in quibbling over the agency of McNichol and his power or right to appoint the Alfalfa Seed & Lumber Company as agent to sell the pledged property and collect therefor, it being contended by plaintiff that proof of his agency and the extent thereof were necessary before any of the correspondence between plaintiff and defendants or from plaintiff to the Alfalfa Seed & Lumber Company was competent. This contention and the rulings sustaining it were under the circumstances entirely wrong. Whether McNichol originally had authority to make the loan and accept pledge for its payment, or to arrange for the disposition of the pledged property, as he did, we think makes no difference whatever, since the plaintiff had clearly and fully ratified what he did. It advanced the money, accepted the pledge and recognized the authority of the Alfalfa Seed & Lumber Company to sell the pledge by knowingly accepting from it receipts of such sale or sales, and is now in court seeking the enforcement of rights it acquired through the acts of McNichol. All of this took place with the full knowledge of the plaintiff. Together these things certainly would dispense with proof of McNichol's agency and right to act for plaintiff. Am.

Law Institute's Restatement of the Law of Agency, § 97; 21 R. C. L. 927, § 106; 2 C. J. 470, § 83. Until the note was past due and unpaid the plaintiff had no right to apply the pledged property to the payment of the note. After default in payment plaintiff, under the law, could advertise and sell the pledge and after satisfying the debt pay to the defendants any balance. Section 2337, Rev. Code 1928.

■ On the 28th of December, when the plaintiff at the request of defendants appointed the Alfalfa Seed & Lumber Company to "release" the alfalfa seed on the order of H. D. Hallenbeck and the receipt of 6¢ per pound therefor, the debt was not due. The appointment was made on the suggestion of the defendants and "to facilitate . . . the marketing" of the alfalfa seed. In other words, the method pursued of converting the pledge to the payment of the debt instead of the one provided by law was adopted at the request of defendants. None of the pledge could be disposed of without an order from H. D. Hallenbeck. He had control and power to reduce it, or any part of it, to cash. We think under the circumstances the Alfalfa Seed & Lumber Company in receiving the money and as custodian thereof was the agent of both the plaintiff and the defendants.

If the defendants had paid their note and interest thereon, the pledge would have been returned to them, or failing to pay the note and interest plaintiff would have followed the statute (section 2337, *supra*) and sold the pledge at public auction after notice. In neither case would plaintiff have had anything to do with the Alfalfa Seed & Lumber Company except as warehouseman. Defendants, in their letter to plaintiff requesting permission to sell the pledge, suggested that the Alfalfa Seed & Lumber Company or Sanguinetti, a local merchant of Yuma, be ap-

pointed to collect for seed as sold and remit to plaintiff. If plaintiff had designated Sanguinetti instead of the Alfalfa Seed & Lumber Company and the former had failed to remit, whose loss would or should it have been? It seems that in submitting to plaintiff the Alfalfa Seed & Lumber Company and Sanguinetti as proper parties to act as agent in selling the seed and collecting therefor, the defendants in effect vouched for the financial integrity and ability of both and since the Alfalfa Seed & Lumber Company, the one selected, did not remit, the loss was the direct result of the defendants' representations and it was they, although acting in good faith, who caused the loss and therefore should sustain it.

This conclusion is based upon the well-recognized principle of equity that of two innocent persons the one whose act causes a loss should bear it. (*Green* v. *Gila Water Co.*, 36 Ariz. 303, 285 Pac. 263; *California Bank* v. *Daniel*, 36 Ariz. 549, 288 Pac. 7; *Hughes* v. *The Riggs Bank*, 29 Ariz. 44, 239 Pac. 297; *Brandon* v. *Carr*, 28 Ariz. 454, 237 Pac. 642.

It appears that sales of the pledged property amounted to $2,112.90; that of this sum $1,252.30 was remitted to plaintiff. The balance of $860.60 is accounted for, in part, as follows: One item of $55.30 and another of $361.04 were credited by the Alfalfa Seed & Lumber Company to defendants' account with it. This was a clear violation of the trust and agency of both the defendants and the Alfalfa Seed & Lumber Company. Defendants were entitled to nothing until plaintiff was paid.

Defendants complain of the allowance by the court of an attorney's fee of $50, contending that there is no evidence of the value of such services. The note provided for an attorney's fee in case of action to recover. It was stipulated by counsel that the court

might fix such fee without putting in any evidence. We think this stipulation was proper and binding upon the parties. The judge, himself a lawyer, would be presumed to know what was a reasonable and fair compensation for bringing and prosecuting the action to judgment.

There are many other assignments but as they are based, as heretofore indicated, upon immaterial and collateral issues and their determination would only lengthen the opinion, we will not discuss them.

For the reasons herein assigned, we conclude that the judgment on the merits was right and should be affirmed.

LOCKWOOD, C. J., and McALISTER, J., concur.